1   Kenneth G. Parker (SBN 182911)
      kparker@tlpfirm.com
2   Robert G. Loewy (SBN 179868)
      rloewy@tlpfirm.com
3   TEUTON, LOEWY & PARKER, LLP
    3121 Michelson Drive, Suite 250
4   Irvine, California 92612
    Telephone:  (949) 442-7100
5   Facsimile:   (949) 442-7105

6   Attorneys for Plaintiffs
    HARRY J. BINDER & CHARLES E. BINDER

7

8                    UNITED STATES DISTRICT COURT

9       FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  HARRY J. BINDER, *et al.*          ) **Case No.: CV 07-02760-GHK (SSx)**
                                       )
12              Plaintiffs,            ) ASSIGNED TO:
                                       ) Magistrate Judge Suzanne H. Segal
13         vs.                         )
                                       ) **PLAINTIFFS' NOTICE OF**
14  DISABILITY GROUP, INC., a corporation; ) **MOTION AND MOTION TO**
    RONALD MILLER, an individual; and ) **COMPEL FURTHER**
15  DOES 1 to 10, inclusive,          ) **PRODUCTION OF DOCUMENTS**
                                       )
16              Defendant.            ) **[JOINT STIPULATION**
                                       ) **REGARDING MOTION TO**
17                                     ) **COMPEL PRODUCTION OF**
                                       ) **DOCUMENTS; DECLARATION OF**
18                                     ) **KENNETH G. PARKER FILED**
                                       ) **CONCURRENTLY HEREWITH]**
19                                     )
                                       ) Date:     June 3, 2008
20                                     ) Time:     10:00 a.m.
                                       ) Place:    Room 23
21                                     )
                                       )
22  _____)

23

24

25

26

27

28

                                    1
    _____
            MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR**

**ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 3, 2008, at 10:00 a.m., in Courtroom 23, located at 312 N. Spring Street, Los Angeles, California 90012, plaintiffs Harry Binder and Charles Binder shall, and hereby do, move for an order compelling further production of documents.  The motion shall be based on this notice, the stipulation filed concurrently herewith, such other papers as the parties may file under Local Rule 37, the hearing on this matter, and on such other matters as this Court may appropriately consider.

Date: May 13, 2008                    TEUTON, LOEWY & PARKER LLP
                                       KENNETH G. PARKER

                                       By ___/s/ Kenneth G. Parker_____
                                               Kenneth G. Parker

                                       Attorneys for Plaintiffs HARRY J. BINDER,
                                       *et al.*

Counsel:
Thomas M. Galgano (TG 4621)
GALGANO & ASSOCIATES, PLLC

MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS

1   Kenneth G. Parker (SBN 182911)
     kparker@tlpfirm.com
2   TEUTON, LOEWY & PARKER, LLP
   3121 Michelson Drive, Suite 250
3   Irvine, California 92612
   Tel.: (949) 442-7100; Fax: (949) 442-7105
4
   Attorneys for Plaintiffs
5
   Ronald D. Miller (SBN 170221)
6    (rmiller@disabilitygroup.com)
   Matt Kohn (SBN 97660) (of Counsel)
7    (mattkohn@msn.com)
   2917 Santa Monica Blvd
8   Santa Monica, CA 90404
   Tel.: (310)829-5100; Fax: (310)829-0010
9
   Attorneys for Defendants
10

11            UNITED STATES DISTRICT COURT

12     FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

13

| | |
|---|---|
| 14  HARRY J. BINDER, an individual; and<br>     CHARLES E. BINDER, an individual, | ) **Case No.: CV 07-02760-GHK (SSx)**<br>) |
| 15 | )**JOINT STIPULATION** |
|          Plaintiffs, | )**REGARDING MOTION TO** |
| 16 | )**COMPEL: (1) PRODUCTION OF** |
|       vs. | )**DOCUMENTS AND FURTHER** |
| 17 | )**RESPONSES TO RFPS, SET ONE** |
|   DISABILITY GROUP, INC., a corporation; | )**AND RFPS, SET TWO; AND (2)** |
| 18  RONALD MILLER, an individual; and | )**FURTHER RESPONSES TO** |
|   DOES 1 to 10, inclusive, | )**INTERROGATORIES TO MILLER,** |
| 19 | )**SET TWO;  DECL. OF KENNETH** |
|        Defendant. | )**G. PARKER IN SUPPORT** |
| 20 | )<br>)[REFERRED TO MAGINSTRATE |
| 21 | )JUDGE SUZANNE H. SEGALL] |
| 22 | )Pretrial Hearing:    None Set<br>)Trial Date:         None |
| 23 | )Discovery Motion   Cutoff:  None<br>)Discovery Cutoff:   June 28, 2008 |
| 24 | )<br><span style="text-decoration:line-through;">Hearing Date: ~~May xxx 2008~~</span> June 3, 2008 |
| 25 | )Time:  10:00 a.m.<br>)Place:  Courtroom 23, Spring Street |
| 26 | ) |

27

28

                              1

1    COME NOW the parties to this action, through their respective attorneys of

2    record, and respectfully submit the following joint stipulation regarding the motion to

3    compel filed by Plaintiffs.  The Court's Scheduling Order is attached hereto as

4    Exhibit A; a copy of the Court's Order Re: Extension of Scheduling Dates is attached

5    hereto as Exhibit B.

6

7    **I.      Plaintiffs' Introductory Statement**

8           **A.      Factual Background**

9           This is a trademark infringement action brought by Harry J. Binder and Charles

10   E. Binder and affiliated entities ("Plaintiffs") seeking, among other things, damages

11   and a permanent injunction for Defendants' infringement of the registered trademarks

12   "Binder & Binder" and "Binder and Binder."[1]  A copy of the operative First

13   Amended Complaint in this matter is attached hereto as Exhibit C.

14          Through affiliated entities, including Binder and Binder- The National Social

15   Security Disability Advocates, LLC, Law Offices - Binder and Binder, P.C. and

16   various regional entities, Plaintiffs have been providing legal, paralegal and/or non-

17   attorney advocacy services in the field of social security disability benefits for many

18   years.  Plaintiffs provide these services nationwide.

19          The Defendants, Disability Group, Inc. and Miller, operate a similar business

20   that is a direct competitor of Plaintiffs.  In deliberate disregard of Plaintiffs'

21   intellectual property rights, Defendant Disability Group, Inc., under the direction of

22   Managing Director and Co-Defendant Miller, purchased the internet keyword "binder

23   and binder" from www.google.com.  The entry of "binder and binder" in the search

24   box in Google generated two advertisements and links to Defendants' websites, one

25   of which was under the tailor-made infringing heading "Binder And Binder," and

26   both of which appeared higher on the Google search results page than the

27   _____

28   [1] Plaintiffs, .Harry J. Binder and Charles E. Binder are the co-owners of federal
trademark Registration Nos. 2,161,479,  2,161,478, and 2,109,191 for these marks.

2

1  advertisement and link to Plaintiff's website.  As a result of the Defendants' actions,

2  Plaintiffs, Harry J. Binder and Charles E. Binder and Plaintiffs' related entities have

3  been injured.

4        Defendants have admitted that they received at least 188 website submissions

5  from their use of the "Binder and Binder" keywords on Google from April 2006 to

6  November 2006.  It turns out that these 188 submissions came only from their first

7  website, www.disabilitygroup.com (the "First Website").  When the parties were last

8  before this Court, Plaintiffs sought the production of unredacted identifying

9  information profiles as to all 188 inquiries originating form the First Website, and

10  particularly the 18 of the 188 that became clients.  The Court granted that motion.

11        **B.     The Current Dispute and Background**

12             **1.  Discovery Requests and Responses at Issue.**

13        The following discovery requests and responses are relevant to this motion:

14             a.     Plaintiffs' Request for Production of Documents, Set One (Exhibit

15                    D);

16             b.     Defendants' Response to Request for Production of Documents,

17                    Set One (Exhibit E);

18             c.     Plaintiff's Request for Production of Documents, Set Two

19                    (Exhibit F);

20             d.     Defendants' Response to Request for Production of Documents,

21                    Set Two (Exhibit G);

22             e.     Defendants' Supplemental (Further) Response to Request for

23                    Production of Documents, Sets One and Two (Exhibit H);

24             f.     Plaintiffs' Interrogatories to Ronald Miller, Set Two (Exhibit I);

25                    and

26             g.     Defendant Miller's Response to Interrogatories, Set Two (Exhibit

27                    J).

28

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

1

## 2.     The Current Dispute

2      From the time this case was filed until February 1, 2008, Disability Group and

3  Ron Miller represented at all times that Disability Group's "webmaster" was a

4  contractor named Michael Vincent.  In discovery, Mr. Vincent had produced Google

5  adwords information relating only to the website www.disabilitygroup.com (the

6  "First Website"), and in their discovery responses prior to January 2008 and their

7  initial disclosures, the Defendants did not disclose the existence of a second

8  webmaster, David Dimas, who ran a similar Google adwords program for a parallel

9  website, www.socialsecuritydisabilityhelpcenter.com (the "Second Website").

10 (Plaintiffs knew of the Second Website, but not of Mr. Dimas' existence or of an

11 infringing ad campaign related to the Second Website.)

12     On February 1, 2008, Disability Group's second webmaster, Mr. Dimas,

13 appeared pursuant to Plaintiffs' subpoena on him and testified that there was a

14 *separate* Google adwords account for the Second Website on which adwords

15 containing the word "binder" were used.  These adwords included the words

16 "Binder," "Binder and Binder" and "Binder & Binder."  (Dimas Depo. 67:25 to 68:9;

17 27:18 to 28:4 (Parker Decl. Ex. K.)  This discovery dispute arises out of efforts to

18 obtain additional documents and an interrogatory response related to the Second

19 Website.

20     Upon completing Mr. Dimas' deposition, Plaintiffs immediately began a meet-

21 and-confer process to obtain further, and accurate, discovery responses and

22 documents from defendants, sending an e-mail on February 1, 2008 and letters on

23 February 7, 2008, February 12, 2008, February 15, 2008 letter and April 9, 2008, all

24 regarding responses and production.  (*See* Exhibits L, M, N, O and P.)  After

25 conferring, the parties filed a stipulation with Judge King to amend the Scheduling

26 Order and move the discovery cutoff, and Judge King entered an order moving the

27 cut-off to June 28, 2008.  (Ex. B.)

28

Despite some supplementation (See Exhibits H (further response) and Q (documents)), Defendants have still not appropriately provided further responses to document requests and necessary documents. Plaintiffs now seek an order compelling these responses and production of these documents.

## II.    Defendants' Introductory Statement:

In lieu of "Introductory Statement," see defendants' position statements relevant to each "disputed issue" and "request and response", below.

## III.    Disputed Issue No. 1:  Documents Reflecting Keywords Used for the Second Website and the 411 Website

### A.    Request and Response

**Request No. 3:**
(a) All Documents concerning the nature of the actual promotional materials for goods and services offered for sale under the BINDER & BINDER TRADEMARKS, in whole or in part, in connection with Defendants' services, including, but not limited to, any brochures, commercials, newspaper articles, magazine advertisements, ***Internet advertisements[,] websites***, internet search engines, or other promotional materials in which ***Defendants' purchased keywords***, displayed a heading linking to the Defendants' Website, or otherwise used or displayed in connection with the Defendants' Website; and (b) All Documents identifying the specific media (e.g., Google.com, Time magazine, CBS network TV, New York Times) and date on which such advertising and promotional material has appeared.
(Exhibit D (emphasis added).)

**Response No. 3:**
None can be identified and none exist.
(Exhibit E.) [No supplemental response]

### B.    Plaintiffs' Position

Defendants did not object to the interrogatory, but claim that no documents exist that concern "Internet advertisements" or "materials in which Defendants'

purchased keywords."  This is simply not true.  In particular, reports remain unproduced with respect to the use of the keyword "BINDER."  Having not objected to the request, Defendants are now obligated to produce all documents responsive to it.

A party is obligated to produce all requested and nonprivileged documents that are in its custody, possession or control in response to a request.  Fed. R. Civ. Proc. 34(a); *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 512 (W.D. Pa. 1983).  To date, Defendants have produced documents related to their website www.disabilitygroup.com (the "First Website") and a limited amount of documents related to the Second Website and the 411 Website (Exhibit Q).  As mentioned above, the First Website is the one from which the "188" had indicated their interest in Disability Group, Inc. after keying in some form of the word "BINDER" on www.google.com.  Defendants produced these documents via Mr. Vincent, who they presented as their "webmaster."  These documents were the basis upon which Plaintiffs proceeded and prepared their case until February 1, 2008.

The documents originally produced by Disability Group, via Mr. Vincent, literally told only half the story.  The second webmaster and Google advertiser, Mr. Dimas, testified on February 1, 2008 that additional reports related to the use of "BINDER" adwords on www.google.com could be identified by searching Defendants' records related to the Second Website.  Specifically, Mr. Dimas testified that control of the Second Website has passed to the Defendants.  Thus, these records were always immediately available to Defendants, and in fact similar records were produced by Mr. Vincent for the First Website.  Despite that, Defendants did not produce any of them until after Mr. Dimas revealed the evidence regarding the adwords campaigns on the Second Website and 411 Website and Plaintiffs demanded their production (pointing out, in that demand, over a dozen requests requiring its previous production).

6

Potential clients' intake sheets and submissions from that Second Website also went to Disability Group, but to this day have not been produced.  According to Mr. Dimas, he controlled the adwords account for the Second Website on Disability Group's behalf until sometime in 2007.  Now, Disability Group controls this Second Website and the adwords account associated with it, as Mr. Dimas had turned over control of it to them in 2007.  Mr. Dimas also controlled another website, www.socialsecuritydisability411.com (the "411 Website").

In an attempt to cure this deficiency, Defendants produced documents DG365 through DG386.  (*See* Exhibit Q.)  However, the following problems remain with respect to the documents that were produced:

1.    There is still no document reflecting what "Customer ID" is linked to which unique website identifier (URL).  The URLs are www.socialsecuritydisabilityhelpcenter.com (the "Second Website") and www.socialsecuritydisability411.com (the "411 Website").  Without documents reflecting those links, it is impossible to fully evaluate what was produced without making assumptions.  These documents relate to the advertising programs and the use of the BINDER keywords.

2.    None of the documents reflect a search for the keyword "binder" or "binder & binder."

3.    There is no clear evidence that the Second Website adwords account was searched at all.

4.    It appears, however, that Defendants may have produced a report for the 411 Website at dg377-86 containing relevant information.  However, no such report was generated for the Second Website, assuming that the Second Website is linked to ID 480-407-4592.  A report such as the dg377-86 report needs to be produced for the Second Website.  This is

7

1    very important, as the documents that are available show significant user

2    click-through from www.google.com to the Second Website.

3    5.    The search of the Second Website (again, assuming that ID 480-407-

4         4592 is the Second Website) is inadequate.  All searches are limited by

5         campaign and date, in addition to not searching the word "binder" to

6         ensure all requested results are captured (*see* dg365).   To correct this

7         problem, the following search needs to be conducted by Disability

8         Group:

9         Date Range:  All Time
         Campaigns:   All
10        Ad Groups:   All
         Ad Status:    All
11        Keywords:    binder
         Ad Distribution:  All
12        Keyword matching: All
         Scheduled:  No
13        Email notification:  Off.

14        This search was conducted in connection with the First Website, but for

15        some reason was no conducted with the Second Website.  Thus, it

16        remains that no such search has been done -- the documents Defendants

17        have produced reflect limitations in the "Campaigns" and "Ad Group"

18        fields, as well as time limitations, that may have eliminated results

19        showing infringement.

20   6.    There is no report for either the 411 Website or the Second Website that

21        is similar in form to the report for www.disabilitygroup.com that Mr.

22        Vincent prepared and that was marked as Exhibit 9 to his deposition.  At

23        this time, such a report needs to be presented in light of the serious

24        omissions in discovery documents and responses.  Plaintiffs consent to

25        such a report being marked for Kenneth G. Parker's eyes only and he

26        will treat it in an identical manner to the treatment of Exhibit 9 to Mr.

27

28

1    Vincent's deposition.  This report may be generated by running the

2    search with the parameters set forth above for "all" keywords.

3    7.    There is no further evidence that a thorough and diligent search has been

4    conducted for potential client submissions originating from the Second

5    Website.  In fact, based on Mr. Dimas' testimony, it appears that *every*

6    submission from the Second Website during the time period March 2006

7    to November 2006 should simply be produced.  This issue is discussed

8    further below.

9    This Court should issue an order compelling the production of those documents and

10   reports, which Defendants either have or have simple and quick access to.

11

12   **C.        Defendants' Position as to Disputed Issue No. 1:**

13

14   **Plaintiffs "<u>Binder</u>" have not met their burden of offering a coherent**

15   **statement of the facts or a cogent argument to *<u>compel</u>* defendant "<u>Disability</u>" to**

16   **provide evidence that did not previously exist:**

17   **(1).    <u>First</u>, Binders' initial assumptions are contrary to existing record;**

18   **(2).    <u>Second</u>, the facts relevant to this motion need to be clearly set forth;**

19   **(3).    <u>Third</u>, specific to "<u>Request No. 3</u>" the wording is not tailored**

20   **narrow enough to require defendant to create an internal "report" of a kind that**

21   **is generated and stored only by third party, Google, Inc.  No matter what**

22   **interpretation is fashioned for "<u>Request No. 3</u>", when it was served <u>Oct. 9, '07</u>,**

23   **no such internal "report" existed in Disability's custody, possession, and control;**

24   **(4).    <u>Fourth</u>, Binder waited until *<u>this</u>* week to finally subpoena records**

25   **from third party David Dimas and Google, Inc.**

26

27

28

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

**(FIRST).     Binder starts out making 9 careless assumptions and erroneous conclusions, contrary to the existing fact record in this case:**

> *"The First Website is the one from which the "188" had indicated their interest in Disability Group, Inc. after keying in some form of the word "binder" on www.google.com;  The submissions received from the Second Website ("HelpCenter") were in addition to, and not included in the 188 submissions previously disclosed to Plaintiffs; There is still no document reflecting what "Customer ID" is linked to which unique website identifier (URL); "**HelpCenter**" and "**411 URL**";   None of the documents produced to date reflect a search for the keyword 'binder' or 'binder & binder';  The search of the Second Website is inadequate;   There is no further evidence that a thorough and diligent search has been conducted for potential client submissions originating from the Second Website; No customer submission information related to the 411 Website or the Second Website has been produced;  Defendants have not searched e-mails of their employees for communications concerning the BINDER & BINDER TRADEMARKS."*

**(SECOND).        The factual record relevant to this motion:**

**Exhibit 1** is attached hereto and marked as Bates nos. **DG362** and **BB00003**.   **Exhibit 1** is also **Binder's** Exhibit "B" to the Complaint, as amended. The images on **Exhibit 1** are commonly called a Google Results Page.  **Exhibit 1** is like a photograph -- a snap-shot of what existed at a moment in time. Information and images embedded on **Exhibit 1**  -- and how and what **Disability** and **Binder** did with them -- are the primary fact issues in the case, and the facts relevant to this motion.

Without the knowledge of **Disability** and Mr. Miller (discussed in detail below), on Nov. 2, 2006 ("**Nov. 2nd**") David Dimas created ads and images that appear on **Exhibit 1.**   On **Nov. 2nd**, five other events were triggered:

The first event on **Nov. 2nd**, and unbeknown to Mr. Miller and **Disability**, the images on **Exhibit 1** first appeared as an ad on Google. The images displayed on **Exhibit 1** lasted for a 24 hour period at a Google advertising cost-per-click of **$53.08**.

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

The second event on **Nov. 2nd, Binder's** Director of Internet Operations, Mr. Yui Hang Mui printed-out **Exhibit 1**.  Mr. Mui testified during deposition that on **Nov. 2nd** he did his daily Google routine, entered "binder and binder" search criteria, which displayed **Binder's** natural link along side a Sponsored Link with the title heading "Binder And Binder."  What Mr. Mui saw was the URL displayed as www.socialsecuritydisability411.com ("**411URL**").  (A Universal Resource Locator or "URL" is not a website, but a domain name which links to a website.)  When Mui clicked-on "**411URL**", he was linked to www.socialsecuritydisabilityhelpcenter.com ("**HelpCenter**)", the so-called Second Website, which is owned by **Disability**.

The third event on **Nov. 2nd , Binder's** Operations Director Mario Davila initiated a surreptitious telephone call to **Disability** which he confirmed in an email to Harry and Charles Binder. The import of the email is **Disability** did the right thing from start to finish.  **Disability's** 21 year-old receptionist Vanessa Salas made an error in referencing a "big firm" (Jacoby & Meyers) but then had herself corrected during the same phone call:

> **From: Mario Davila**
> **Sent:** Thursday, November 02, 2006 10:50 AM
> **To:** 'Hang Mui (Intranet)'; 'Harry J. Binder'
> **Cc:** 'Charles E. Binder'; llembeck@mail.com
> **Subject:** RE: Sponsored Search
>
> I called the 800# and the receptionist answered "The Disability Group." **I asked if this was Binder and Binder and told it was not.** I explained that I reached their web site by clicking on a link titled Binder and Binder on Google and was told by Vanessa the receptionist that because Binder and Binder is a big firm, Binder and Binder sends them our disability cases. **I then asked for contact info for Binder & Binder. I was put on hold for 4 minutes and given our website as a contact.**  (Emphasis added).

The fourth event on **Nov. 2nd**, **Disability** received a phone call from Harry Binder, who screamed and threatened Ron Miller, *"you're bidding on my company's*

1  *name on the internet!"* Just by looking at **Exhibit 1**, Mr. Miller recognized only

2  www.disabilitygroup.com as **Disability's** Google Sponsored Link, <u>but he did not</u>

3  <u>recognize "**411 URL**" because he did not know what it was or who owned it.</u>

4      <u>The fifth event</u> on **Nov. 2nd**, Mr. Miller phoned Michael Vincent, who was

5  current webmaster or manager of **Disability's** internet business website

6  www.disabilitygroup.com.  Mr. Miller also phoned David Dimas who was doing

7  keyword testing market research, comparing effectiveness of keywords usage with

8  Google ad spending by testing the results between the "**HelpCenter**" website and

9  www.disabilitygroup.com website. Mr. Miller did the objectively reasonable thing

10 within seconds after Harry's phone call. Mr. Miller told Vincent and Dimas to stop

11 bidding on **Binder's** name and nothing more. Before and after **Nov. 2nd** **<u>Binder</u>** was

12 never able to produce another Google search Results Page the same or similar to

13 **<u>Exhibit 1.</u>**

14      On <u>Feb. 1, '08</u>, David Dimas testified at his deposition. Prior to filing of the

15 complaint, Mr. Dimas is and was a non-party, non-employee, former independent

16 contractor, and not Disability's webmaster.  Mr. Dimas did not operate, maintain, or

17 run ad campaigns related to "**411 URL**".

18      Mr. Dimas runs his home-based companies LegalHelpCenters and

19 webpositionadvisors.  His assignment for **Disability** was testing the efficacy of

20 Google's changing and proprietary algorithms. He tested certain keywords to see how

21 they worked with "**HelpCenter.**" He would take a few keywords and see what their

22 click-through-ratio ("CTR") would be on the ad.  The "CTR" is a trade secret point

23 system that Google has to tell how relevant an ad is. His assignment was to test a

24 keyword's effectiveness; which keyword would Google pull and how relevant it

25 would be.  His testing was not designed to create new leads; was not for the purpose

26 of obtaining new submissions or retained cases for **Disability**.

27

28

The domain name "**411 URL**" was his sole idea and creation, registered by him in his own name and under his own Google Password Account. Unbeknown to anyone at **Disability**, Mr. Dimas created this separate Google account and password and ran keyword tests using "**411 URL**". To this day, **Disability** cannot access "**411 URL**" account. Mr. Dimas testified "**411 URL**" was a brief "*flash-in-the-pan*" test, just a *cloned* site designed to compete on conversions with "**HelpCenter.**" He experimented with "**HelpCenter**" using web *cloned* address "**411 URL**" to test CTR of Google AdWords. In other words, Mr. Dimas was testing one test site with another "*cloned*" test site.  Mr. Dimas created the heading title in the Google ad that displayed the words "Binder And Binder" on **Exhibit 1.**  No one instructed him or suggested to use "Binder And Binder" in a Google heading hyperlink in **Exhibit 1**.

Mr. Dimas testified <u>Trademark owners have a sure and reliable way to block use of Trademark terms as keyword or AdWord selection, bidding, and purchase by submitting email request to Google.</u>  It would have been a significant benefit to everyone in this case had **Binder** given notice of its Trademark by simply emailing Google or displaying an "R-in-a-circle" [ ® ] in its Google ads<u>.  Had **Binder** asked Google via email to block the Trademark "Binder & Binder", a screen would have popped-up that says 'you cannot bid on these terms as Keywords' -- end of story.</u>

Mr. Dimas' "**411 URL**" was never a separate or additional website.  As stated, "**411 URL**" was a URL *clone* of "**HelpCenter.**" The Google advertisement he created for "**411 URL**" on **Exhibit 1** was started and ended quickly, he says, **"*by the amount of money spent, it couldn't be more than a day or two.*"**  He spent total out-of-pocket $53.08 of his own money testing "**411 URL**." He never told **Disability** about it, and never sought reimbursement for the $53.08.  **Disability's** credit card account, active and on file with Google, never recorded these transactions. Mr. Dimas was simply going about his internet assignment without micro-communicating every move he made for the client.

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

1       No one at **Disability** instructed Mr. Dimas to select, bid, and purchase

2   keywords "binder and binder" or any variation, to trigger a Google Sponsored Link

3   on "**HelpCenter**".  Mr. Dimas selected "binder and binder" and variations as

4   keywords by going to internet utility site called "Overture," which is Yahoo! today,

5   and he typed-in "Social Security Disability" to show him a listing of keywords which

6   then included "Binder and Binder." He incurred total out-of-pocket $339.27 on

7   Disability's Google account using "binder" and "**HelpCenter**."

8       **Exhibit 2** (as used herein, the "**Report**") is attached hereto and marked as

9   Bates nos. **DG216 to DG219. Disability** produced the **Report** as an Initial

10  Disclosure. The **Report** contains the "**188**" inquiries. **Binder** introduced the **Report**

11  as **Exhibits '23' and '24'** during **Jan. 30**[th] deposition of **Disability's** I.T.

12  independent contractor, James Oates. Mr. Oates testified he built the **Report** and ran

13  all the queries to insure that he had the proper data range of March '06 to November

14  '06. The **Report** itself is an admission that out of **188** inquiries and **18** clients were

15  retained who had even a remote, indirect connection to the word "binder" or any

16  variation of the Trademark.

17      Mr. Oates meticulously explained how he compiled the **Report**. The **Report** is

18  all-inclusive compilation of a thorough search which resulted in extraction of all PST

19  files in the company's current file computer system and archives, of all-source raw

20  data with the word "binder" and every variation. The **Report** is the master

21  compilation of all **188** inquiries, client submissions, retained cases, and is based on

22  all internet domain URL sources, including **"Disabilitygroup.com" "HelpCenter"**

23  and its cloned **"411 URL"**.  Every customer submission form relating to "binder" in

24  any variation from "**411 URL**" and "**HelpCenter**" was extracted for this inquiry. The

25  **Report** includes every potential client inquiry, every e-mail, every e-mail lead, every

26  internet submission form inquiry, every telephone call in-take message, every live e-

27

28

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

1    mail chat; and any and all raw data source with the word "binder" in every variation,
2    at all times.

3         Persons listed in the **Report** include all inquiries and submissions that called-in
4    randomly by telephone, that is, the data includes each stored telephone intake
5    message and each telephone intake submission form. He cross-checked these data
6    entries with the known use of the word "binder."  In other words, the **Report** is the
7    master file of all inquiries, submissions, and retained cases, based on all internet, e-
8    mail, telephone, and any raw data source with the word "binder" or any variation, in
9    the entire system, at all times.

10        He exported all active and archived file inquiries that **Disability** would have
11   ever received from any source of any kind. He queried and extracted the e-mail data
12   from the earliest date of all emails that **Disability** received as an inquiry. Since the
13   beginning of **Disability**, the method of receiving and storing e-mail inquiries and
14   submissions remained the same and the storage place internally remained the same.
15   Mr. Oates searched for everything that was not a direct ad source e-mail as well. In
16   other words, even when a consumer sent **Disability** a general question or comment e-
17   mail, it gets routed to client services and ends up being another inquiry stored in the
18   system. If any message in the field called a "memo box" on a submission form used
19   the word "binder" Mr. Oates was able to extract it for the **Report**. The way that Mr.
20   Oates tracked internet ads and the way that he knows the origin of a potential client
21   inquiry, he assigns each campaign a unique e-mail address. So, he is always 100%
22   sure of identifying a Google ad source generated a particular client inquiry and/ or
23   submission form from say, Yahoo!.

24        After Mr. Dimas' Feb. 1st deposition, he helped facilitate obtaining Google
25   AdWords reports pertaining to Google activity associated with "**HelpCenter**" and
26   **"411 URL"** bearing and contain use of "binder" or any variation. No one controls,
27   changes, or is able to manipulate Google's stored data and information.  For one
28

15

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

reason or another, **Disability** is being sued for Google ad spending of $53.08 +
$339.27 + $1,226.41 .  What is striking is, in the same period in 2006, **Binder**
generated over **$46 Million** in legal revenues and spent almost **$500,000.00** in
Google ads. The question must not be neglected:  Why is **Binder** pursuing a
insignificant national competitor, other than to try to swat a fly with a sledge
hammer?

     For example, <u>**DG373**</u> was produced. It is the Google activity report for "**411
URL**" for period "All Dates."  It reports use of  "binder and binder" keywords to
trigger searched results and generated **62 clicks** at a total ad cost of $53.08 .

     Example two, <u>**DG367**</u> was produced. It is the Google activity report for
"**HelpCenter**" for period <u>Jun. 20, '06</u> to <u>Nov. 3, '06</u>.  It reports use of  "binder and
binder" keywords to trigger searched results and generated **622 clicks** at a total ad
cost of $339.27.  Compare **Binder's** reported results for the same period: **128,425
clicks** at an ad cost of **$219,164.00**.

     Example three, <u>**DG199**</u> was produced. It is the Google activity report for
"**DisabilityGroup.com**" for period <u>Mar. 26, '06</u> to <u>Nov. 2, '06.</u> It reports use of
"binder and binder" keywords to trigger searched results and generated **2,952 clicks**
at a total ad cost of $1,226.41**.**  Compare **Binder's** reported results for the same
months in 2006: **173,078 clicks** at an ad cost of **$303,892.72**.

     In effort to accommodate, **Disability** produced the following internal reports:

     **Feb. 11**[th]  Mr. Dimas provided Bates no. <u>**DG374**</u>: the separate Google Report
for "**411 URL**" (11/5/06 to 2/11/08) for use of Keyword "binder" in any form in all
campaigns in Google Acct. 719-120-8030.

     **Feb. 11**[th]  Mr. Dimas provided Bates no. <u>**DG375**</u>: the separate Google Report
for "<u>**411 URL**</u>" (5/31/06 to 11/3/06) for use of Keyword "binder" in any form in all
campaigns in Google Acct. 719-120-8030.

     **Feb. 11**[th]  Mr. Dimas provided Bates nos. <u>**DG376 + DG376.1**</u>: the separate
Google Report for "<u>**411 URL**</u>" Clone AdWords final report ("All Dates") (5/31/06 to

2/11/08) use of Keyword "binder" in any form in all campaigns in Google Acct. 719-120-8030.

**Feb. 11th**  Mr. Dimas provided Bates nos. **DG377, DG378, DG379, DG380, DG381, DG383, DG384, DG385, DG386**: The separate Google AdWords Report for "**411 URL**" ("All Dates"), which lists dozens of Google AdWords or keywords including "binder and binder" and "social security binder" with click totals specific to each Keyword purchased.

**Feb. 11th** Mr. Dimas facilitated password access for production of Bates No. **DG365**: the separate Google Report for the so-called Second Website "**HelpCenter**" (all dates) for use of Keyword "binder" in any form in all campaigns in Google Acct. 480-4078-4592.

**Feb. 11th** Mr. Dimas facilitated password access for production of Bates no. **DG366**: the separate Google Report for the so-called Second Website "**HelpCenter**" (11/4/05 to 6/19/06) for use of Keyword "binder" in any form in all campaigns in Google Acct. 480-4078-4592

**Feb. 11th** Mr. Dimas facilitated password access for production of Bates no. **DG368**: the separate Google Report for the so-called Second Website "**HelpCenter**" (11/4/06 to 2/5/08) for use of Keyword "binder" in any form in all campaigns in Google Acct. 480-4078-4592.

**(THIRD + FOURTH).   "Request No. 3" is not worded narrow enough to require defendant to create an internal "report" of a kind that is generated and stored by third party, Google, Inc.  No matter what interpretation is fashioned for "Request No. 3", when it was served Oct. 9, '07, no such internal "reports" existed in Disability's custody, possession, and control.  And, Binders waited until this week to first subpoena David Dimas' and Google, Inc. for records.**

**Binder** did not re-print "Request No. 3" without manipulating punctuation and therefore, its meaning. Nevertheless, without parsing and killing the English language, the plain meaning of "Request No. 3" has nothing to do with internal Google "reports."  Paraphrased "Request No. 3" reads as innocuously plain as this:

'*Actual promotional materials offering legal service under the Binder
& Binder Trademarks including brochures, commercials, newspaper*

*article, magazine advertisements, internet advertisements websites, internet search engines, or other promotional materials in which Defendants' purchase keywords, displayed a heading link to Defendants' website, and documents identifying the specific media and date on which such advertising and promotional material has appeared.*'

### D.    Request and Responses

**Request No. 4:**
Copies of all of Defendants' actual or proposed advertisements, internet advertisements, and websites, or other promotional materials containing or bearing the BINDER & BINDER TRADEMARKS.
(Ex. D.)

**Response No. 4**:
None can be identified and *none exist.*
(Ex. E (emphasis added).)

**[Supplemental] Response No. 4**:
Supplemental to Response No. 4, Exhibit B to the Complaint (Bates BB00003), and no other, actual, or proposed advertisement and websites or promotional materials that were created by defendant or on behalf of defendant bear or contain BINDER & BINDER TRADEMARKS.
(Ex. H.)

### E.    Plaintiffs' Position

Plaintiff incorporates its position set forth in Section III.C above.  In addition, the use of the adwords themselves are advertisements.  As set forth above, the search for the adwords has been insufficient and needs to be corrected.  In addition, there is no document produced to date showing the advertising header used with various keywords.  Defendants have not explained why this is not available.

### F.    Defendants' Position re "Request No. 4"

**The motion fails to raise a legitimate non-compliance issue.  Disability repeats its previous position statement above. When plaintiffs state, "*the use of adwords themselves are advertisements*", they fail to support that premise with**

18

1  any authority.  Courts have concluded such *use of adwords themselves* is entirely

2  behind the scenes. The same courts conclude *"use of adwords themselves"* are not

3  a "use in commerce."[2]  Nevertheless, Disability answered and then

4  supplemented its answer, concurrent with identifying an additional document

5  responsive to the request.  Further, the wording in "<u>Request No. 4</u>" is not

6  tailored narrow enough to require defendant to create an internal "report" of a

7  kind that is generated and stored by third party, Google, Inc.

8

9      **G.     Request and Responses**

10     **Request No. 8**: All Documents concerning the use or proposed use of the
       BINDER & BINDER TRADEMARKS or any variant thereof by Defendant.

11  (Exhibit D.)

12     **Response No. 8**: **None** can be identified and *none exist other that documents
       previously produced by Michael Vincent during his Aug. 29th deposition.*

13  (Exhibit E (emphasis added).)

14     **[Supplemental] Response No. 8**: Supplemental to Response No. 8, **all
       previously produced documents with Bates nos.:** DG-365; DG366; DG-367;

15     DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369;
       DG380; DG-381; DG383; DG-384; DG385; DG-386

16  (Exhibit H (emphasis in original).)

17

18     **H.     Plaintiffs' Position**

19     Plaintiff incorporates its position set forth in Section III.C above.  In addition,

20  the adwords themselves are advertisements.  As set forth above, the search for the

21  adwords has been insufficient and needs to be corrected.  The search needs to include

22  any "BINDER" adword of any permutation.

23

24

25  ────────────────

26  [2] <u>**S&L Vitamins, Inc v. Australian Gold**</u> (N.Y. Sept. 2007) is the 6th consecutive opinion in a New York federal court
       saying that advertisers don't make a trademark "use in commerce" when buying keywords, joining the decisions,

27     <u>**Merck v. Mediplan**</u> (SDNY 2006); <u>**Hamzik v. Zale**</u> (NDNY 2007); <u>**Site Pro-1 v. Better Metal**</u> (EDNY 2007);
       and <u>**FragranceNet v. FragranceX**</u>.com (EDNY 2007); and <u>**Rescuecom v. Google, Inc.**</u> (NDNY 2006) which
       reached the same conclusion with respect to keyword sales, rather than purchases.

28

────────────────────────────────────────

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

**I.     Defendants' Position re "<u>Request No. 8</u>"**

The motion fails to raise a legitimate non-compliance issue. Disability repeats all previous position statements above.  Disability answered and supplemented its answer, concurrent with production of additional documents responsive to the request.

**J.     Request and Responses**

**Request No. 16**: All Documents concerning the consideration, selection, adoption, and/or purchase by Defendant of the BINDER & BINDER TRADEMARKS, in whole or in part, as internet keywords, as a heading to link to Defendants' Website, or otherwise display or use in connection with Defendants' Website, including those relating to the reasons or decision for their use. (Exhibit D.)

**Response No. 16**: None can be identified and none exist. (Exhibit E.)

**[Supplemental] Response No. 16**: Supplemental to Response No. 16, when Request No. 16 was served, defendants possessed no documents of and concerning "Defendants' Website" -- a term subject to specific discovery instruction/definition, namely, www.socialsecuritydisability411.com ("411 URL"). Defendants had no knowledge "411 URL" was created. After Mr. David Dimas' deposition of Feb. 1, 2008, defendant made immediate written request through counsel in Bates no. DG369 for the Google reports which only Mr. Dimas has the password to, for "411 URL" which are now previously produced Bates nos. DG374; DG-375; DG376; DG-377; DG378; DG-369; DG380; DG-381; DG383; DG-384; DG385; DG-386. (Exhibit H.)

**K.     Plaintiffs' Position**

Plaintiff incorporates its position set forth in Section III.C above.  Defendants' response and the documents produced still do not reflect an adequate search for documents.  A report reflecting ad words containing the word "BINDER AND BINDER" was produced, but document reflecting the selection of the heading "Binder and Binder" to be associated with the 411 Website have not been produced. The reports produced as DG 374 through DG 386 (see Exhibit Q) do not contain this information.  In addition, the use of "BINDER" reflects a use of the "BINDER AND

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

1  BINDER TRADEMARKS" in part, and any documents reflecting such use are

2  responsive to this request.

3

4      **L.    Defendants' Position re "<u>Request No. 16</u>"**

5      **The motion fails to raise a legitimate non-compliance issue.  Disability**

6  **repeats all previous position statements above.  Disability answered and**

7  **supplemented its answer, concurrent with production of additional documents**

8  **responsive to the request.  Plaintiffs' position statement to "<u>Request No. 16</u>" and**

9  **throughout the remainder of this motion is duplicate word processing and adds**

10 **nothing new to earlier argument.**

11

12     **M.    Request and Responses**

13     **Request No. 20:** All Documents concerning Defendants' advertising programs
       with any website search engine company in connection with the BINDER &
14     BINDER TRADEMARKS.
   (Exhibit D.)

15
       **Response No. 20**: Documents previously produced with Bates nos. DG-195 to
16     DG-201; DG-283 to DG-315; DG-322 to DG-323 (attached hereto); DG-220,
       DG-221, + DG-221.1; and other documents previously produced by Michael
17     Vincent during his Aug. 29th deposition.
   (Exhibit E.)

18
       **[Supplemental] Response No. 20**: Supplemental to Request No. 20, **all**
19     **previously produced documents with Bates nos.:** DG-365; DG366; DG-367;
       DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369;
20     DG380; DG-381; DG383; DG-384; DG385; DG-386.
   (Exhibit H (emphasis in original).)

21

22     **N.    Plaintiffs' Position**

23         Plaintiff incorporates its position set forth in Section III.C above.

24 Defendants' response and the documents produced still do not reflect an adequate

25 search for documents.  A report reflecting ad words containing the word "BINDER

26 AND BINDER" was produced, but document reflecting the selection of the heading

27 "Binder and Binder" to be associated with the 411 Website have not been produced.

28

The reports produced as DG 374 through DG 386 (see Exhibit Q) do not contain this information.  In addition, the use of "BINDER" reflects a use of the "BINDER AND BINDER TRADEMARKS" in part, and any documents reflecting such use are responsive to this request.

### O.    Defendants' Position re "<u>Request No. 20</u>"

**The motion fails to raise a legitimate non-compliance issue.  Disability repeats all previous position statements above.  Disability answered and supplemented its answer, concurrent with production of additional documents responsive to the request.**

### P.    Request and Responses

**Request No. 22:** All Documents concerning Defendants' dealings with Google, Inc. in connection with the BINDER & BINDER TRADEMARKS. (Exhibit D.)

**Response No. 22:** Documents previously produced with Bates nos. DG-195 to DG-201; DG-220, DG-221, + DG-221.1; and other documents previously produced by Michael Vincent during his Aug. 29th deposition. (Exhibit E.)

**[Supplemental] Response No. 22:** Supplemental to Request No. 22, **all previously produced documents with Bates nos.**: DG-365; DG366; DG-367; DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369; DG380; DG-381; DG383; DG-384; DG385; DG-386; DG189 to DG192, as updated to DG216 to DG219; DG283 to DG315 (all inclusive Google Report for period 2005-2007, a per month total sum all keywords, clicks.). (Exhibit H (emphasis in original).)

### Q.    Plaintiffs' Position

Plaintiff incorporates its position set forth in Section III.C above.  Defendants' response and the documents produced still do not reflect an adequate search for documents.  A report reflecting ad words containing the word "BINDER AND BINDER" was produced, but document reflecting the selection of the heading "Binder and Binder" to be associated with the 411 Website have not been produced.

The reports produced as DG 374 through DG 386 (see Exhibit Q) do not contain this information.  In addition, the use of "BINDER" reflects a use of the "BINDER AND BINDER TRADEMARKS" in connection with dealings with Google, and any documents reflecting such use are responsive to this request.

**R.     Defendants' Position re "Request No. 22"**

**The motion fails to raise a legitimate non-compliance issue.  Disability repeats all previous position statements above.  Disability answered and supplemented its answer, concurrent with production of additional documents responsive to the request.**

**S.     Request and Responses**

**Request No. 23:** All Documents concerning Defendants' expenditures for all advertisement and promotion which included the BINDER & BINDER TRADEMARKS and any summaries thereof. (Exhibit D.)

**Response No. 23**: Documents previously produced with Bates nos. DG-220, DG-221, + DG-221.1. (Exhibit E.)

**[Supplemental] Response No. 23**: Supplemental to Request No. 23, **all previously produced documents with Bates nos.**: DG283 to DG315 [all inclusive (not limited to "binder") Google Report for period 2005-2007, a per month total sum all keywords, clicks.]; DG194 as updated to DG230; DG339 [per case net profit calculations shows average advertising cost expenditures per case company wide (not limited to "binder")]; DG340; DG-365; DG366; DG-367; DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369; DG380; DG-381; DG383; DG-384; DG385; DG-386. (Exhibit H (emphasis in original).)

**T.     Plaintiffs' Position**

Plaintiff incorporates its position set forth in Section III.C above.  Defendants' response and the documents produced still do not reflect an adequate search for documents.  A report reflecting ad words containing the word "BINDER AND BINDER" was produced, but document reflecting the selection of the heading

23

"Binder and Binder" to be associated with the 411 Website have not been produced. The reports produced as DG 374 through DG 386 (see Exhibit Q) do not contain this information.  In addition, the use of "BINDER" reflects a use of the "BINDER AND BINDER TRADEMARKS" in part, and any documents reflecting such use are responsive to this request.  Costs related to it are responsive as well.

**U.     Defendants' Position re "<u>Request No. 23</u>"**

**The motion fails to raise a legitimate non-compliance issue.  Disability repeats all previous position statements above.  Disability answered and supplemented its answer, concurrent with production of additional documents responsive to the request.  Plaintiffs' position statement to "<u>Request No. 23</u>" is duplicative, except for a vague reference to "*costs related to it are responsive as well*."**

**V.     Request and Responses**

**Request No. 29:** All Documents concerning any communications with Defendants' employees or agents regarding the BINDER & BINDER TRADEMARKS.
(Exhibit D.)

**Response No. 29:** None can be identified and none exist.
(Exhibit E.) [No supplemental response]

**W.     Plaintiffs' Position**

Testimony of Defendants' IT consultant, James Oates, revealed that Defendants have not searched e-mails of their employees for such communications. Specifically, although Mr. Oates searched e-mail files containing e-mail or "intake" inquiries from potential clients at Disability Group, neither Mr. Oates nor anyone else has searched employees' e-mails to determine whether any of the employees have corresponded regarding the name "BINDER."  (Deposition of Jim Oates ("Oates

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

Depo.") 142:4 to 143:9, Parker Decl. Ex. R.) Based on Mr. Oates' testimony, this is an easy search to conduct, but it just has not been done. This Court should order it done. In addition, there remains no evidence that Mr. Dimas, the second webmaster, was contacted regarding this request.

### X. Defendants' Position re "<u>Request No. 29</u>"

**The motion fails to raise a legitimate non-compliance issue. Disability repeats all previous position statements above. Mr. Oates' testimony is carelessly misrepresented and mostly ignored. As to "<u>Request No. 29</u>", Disability answered it did not have possession or control of materials that were requested, and cannot be compelled to produce what it did not have.**

**Prior to Nov. 2nd no known Trademark issue existed versus Binder. On Nov. 2nd Mr. Miller acted objectively reasonability by any standard, when he complied with Harry Binder's rage to stop binding on his name after notice of possible infringement of something.**

### Y. Request and Responses

**Request No. 95:** All documents evidencing or referring to the Google Adwords purchased by Disability which triggered Disability's advertisements containing the word "binder." (Exhibit F.)

**Response No. 95:** None exist other than confidential disclosures under seal, that of Michael Vincent Exhibit 9 to his deposition. (Exhibit G.)

**Response No. 95:** Supplemental to Response No. 4, **all previously produced documents with Bates nos.:** DG-216 to DG-219; DG-365; DG366; DG-367; DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369; DG380; DG-381; DG383; DG-384; DG385; DG-386. (Exhibit H (emphasis in original).)

### Z. Plaintiffs' Position

1    Plaintiff incorporates its position set forth in Section III.C above.  Defendants'

2    response and the documents produced still do not reflect an adequate search for

3    documents.  A report reflecting ad words containing the word "BINDER AND

4    BINDER" was produced, but document reflecting the selection of the heading

5    "Binder and Binder" to be associated with the 411 Website have not been produced.

6    The reports produced as DG 374 through DG 386 (see Exhibit Q) do not contain this

7    information.  In addition, the use of "BINDER" reflects a use of the "BINDER AND

8    BINDER TRADEMARKS" in part, and any documents reflecting such use are

9    responsive to this request.

10

11   **AA.   Defendants' Position re "Request No. 95"**

12   **The motion fails to raise a legitimate non-compliance issue.  Disability**

13   **repeats all previous position statements above.  Disability answered and**

14   **supplemented its answer, concurrent with production of additional documents**

15   **responsive to the request.**

16

17   **IV.   Disputed Issue No. 2:  Production of Intake Information from Customers**

18   **Received from March 2006 to November 2006**

19   **A. Request and Responses**

20   **Request No. 20:** All Documents concerning Defendants' advertising programs
     with any website search engine company in connection with the BINDER &

21   BINDER TRADEMARKS.
     (Exhibit D.)

22
     **Response No. 20**: Documents previously produced with Bates nos. DG-195 to

23   DG-201; DG-283 to DG-315; DG-322 to DG-323 (attached hereto); DG-220,
     DG-221, + DG-221.1; and other documents previously produced by Michael

24   Vincent during his Aug. 29th deposition.
     (Exhibit E.)

25
     **[Supplemental] Response No. 20**: Supplemental to Request No. 20, **all**

26   **previously produced documents with Bates nos.:** DG-365; DG366; DG-367;
     DG368; DG-373; DG374; DG-375; DG376; DG-377; DG378; DG-369;

27   DG380; DG-381; DG383; DG-384; DG385; DG-386.
     (Exhibit H (emphasis in original).)

28

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

1

2    **B. Plaintiffs' Position**

3    Plaintiff incorporates its position set forth in Section III.C above.  For the

4    reasons stated above, the document produced to date are not all documents

5    concerning the Defendants' advertising programs in connection with the BINDER

6    AND BINDER trademarks.  The searches that have been done, in particular, as to the

7    Second Website have not been produced.  In addition, no customer submission

8    information related to the 411 Website or the Second Website has been produced.

9    These documents concern the advertising programs placed with www.google.com.

10    According to Mr. Dimas, the submissions he received from the Second

11    Website were not delineated or segregated by adword (in contrast to the 188

12    submissions that came from the First Website).  This difference appears to be a by-

13    product of different webmasters running the two sites.  It appears that Mr. Vincent,

14    the first webmaster, placed a device on the First Website to track such information,

15    but Mr. Dimas did not place such a device on the Second Website.  (Dimas Depo.

16    21:20 to 22:9, Parker Decl. Ex. K.)

17    The only way that documents sufficient to determine this information can be

18    produced is for the Defendants to produce all intake information (which take the form

19    of e-mailed submission forms from the Second Website) and case retained

20    information related to those intake sheets for the Second Website for time period

21    from March 2006 to November 2006.  Once that information is produced, proper

22    written surveys can be done to determine whether such cases originated from

23    "BINDER" adword searches.

24

25    **C.        Defendants' Position re "Request No. 20"**

26    **Arguments for "Request No 20" are being repeated.  The motion fails to**

27    **raise a legitimate non-compliance issue.  Disability repeats all previous position**

28

27

statements above.  **Disability answered and supplemented its answer, concurrent with production of additional documents responsive to the request.**

### D. Request and Response

**Request No. 33:**
Documents sufficient to show the number of cases retained as a result of the BINDER & BINDER TRADEMARKS being utilized in connection with Defendants' Website.
(Exhibit D.)

**Response No. 33:**
Document previously produced with Bates nos. DG-001 to DG-192; DG-216 to DG-219.
(Exhibit E.)  (no supplemental response)

### E. Plaintiffs' Position

Plaintiff incorporates its position set forth in Section III.C above.  For the reasons stated above, the document produced to date are not all documents concerning the Defendants' advertising programs in connection with the BINDER AND BINDER trademarks.  The searches that have been done, in particular, as to the Second Website have not been produced.  In addition, no customer submission information related to the 411 Website or the Second Website has been produced.  These documents concern the advertising programs placed with www.google.com.

According to Mr. Dimas, the submissions he received from the Second Website were not delineated or segregated by adword (in contrast to the 188 submissions that came from the First Website).  This difference appears to be a by-product of different webmasters running the two sites.  It appears that Mr. Vincent, the first webmaster, placed a device on the First Website to track such information, but Mr. Dimas did not place such a device on the Second Website.  (Dimas Depo. 21:20 to 22:9, Parker Decl. Ex. K.)

The only way that documents sufficient to determine this information can be produced is for the Defendants to produce all intake information (which take the form

of e-mailed submission forms from the Second Website) and case retained information related to those intake sheets for the Second Website for time period from March 2006 to November 2006.  Once that information is produced, proper written surveys can be done to determine whether such cases originated from "BINDER" adword searches.

### F.  Defendants' Position re "<u>Request No. 33</u>"

**The motion fails to raise a legitimate non-compliance issue.  The motion asks for materials not reasonably described or inclusive in the Request.  Disability answered, concurrent with production of documents responsive to the request.  Defendants produced all 196 separate intake sheets "*sufficient to show the number of cases retained as a result of the BINDER & BINDER TRADEMARKES being utilized in connection with its two websites and "411 URL."***

### G. Request and Response

**Request[] No. 77:**
All intake sheets of potential clients contacting Disability by online live chat or email from March 2006 to November 2006.
(Exhibit F.)

**Response to No. 77:**
None exist.
(Exhibit G.)

### H.    Plaintiffs' Position

Plaintiff incorporates its position set forth in Section III.C above.  Submissions received from the First Website and the Second Website were received in the form of e-mails that were generated after the potential client filled out a submission form on the website.  (Dimas Depo. 43:20 to 44:12 and 52:15 to 53:17, Parker Decl. Ex. K.)  Thus, it is certainly the case that e-mail intake sheets exist.  These e-mails are the

keys to the case.  In this instance, the e-mails and intake submission from the First Website were seperable into those that related to the "binder" search string.

According to Mr. Dimas, the submissions he received from the Second Website were not delineated or segregated by adword (in contrast to the 188 submissions that came from the First Website).  This difference appears to be a by-product of different webmasters running the two sites.  It appears that Mr. Vincent, the first webmaster, placed a device on the First Website to track such information, but Mr. Dimas did not place such a device on the Second Website.  (Dimas Depo. 21:20 to 22:9, Parker Decl. Ex. K.)

The only way that documents sufficient to determine this information can be produced is for the Defendants to produce all intake information (which take the form of e-mailed submission forms from the Second Website) for the Second Website for time period from March 2006 to November 2006. This information should be produced.  Once that information is produced, proper written surveys can be done to determine whether such cases originated from "BINDER" adword searches.

**I.      Defendants' Position re "<u>Request No. 77</u>"**

**The motion fails to raise a legitimate non-compliance issue. Disability repeats all previous position statements above.  Documents previously produced with Bates nos. DG-001 to DG-192; DG-216 to DG-219 are responsive to the request and constitute compliance with the duty to disclose additional and supplemental production pursuant to F.R.C.P.**

**V.   Disputed Issue No. 3:  Failure to Fully Identify "Binder" Keywords Used**
**A.      Request and Response**
**Interrogatory No. 16:**

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

Identify all of the keywords purchased by Disability in connection with internet search engines, to trigger advertisements for Disability containing the word "binder".

(Exhibit I.)

**Response to Interrogatory No. 16:**
"binder and binder" and "social security binder"

(Exhibit J.)

### B.     Plaintiffs' Position

This response is incorrect, and the status of the document production combined with this response creates a concern that the Defendants have not revealed the true extent of the benefits Defendants gained from their infringement.  Mr. Dimas testified that he used the adword "BINDER" in his adwords campaign for the Second Website. (Dimas Depo. 26:14 to 27:4 (Parker Decl. Ex. K).)  Defendants have neither supplemented their answer to reflect the truth, nor have they produced documents related to the use of the BINDER adword in connection with the Second Website.

### C.     Defendants' Position re "<u>Interrogatory No. 16</u>"

**The motion fails to raise a legitimate non-compliance issue. "<u>Interrogatory No. 16</u>" is not accurately represented.  Despite this, Disability's answer is responsive to the question.**

## V.     CONCLUSIONS

### A.     Plaintiffs' Conclusions

For the foregoing reasons, Plaintiffs request an order of this Court compelling accurate responses to the requests described above, and documents requested above, consistent with the Plaintiffs' motion and the positions Plaintiff has set forth in this joint stipulation.

### B.     Defendants' Conclusions

31

1    **Defendants' request an order denying plaintiffs' request to compel**

2    **production.**

3

4

5    Date: May 9 , 2008                    TEUTON, LOEWY & PARKER LLP
                                           KENNETH G. PARKER
6

7                                          By  /s/ Kenneth G. Parker
                                               ─────────────────────────────
8                                               Kenneth G. Parker

9

10

11   Digitally Signed and Dated:          DISABILITY GROUP, INC.

12

13

14                                         By ─────────────────────────────
15                                              Matt Kohn
                                                Of Counsel
16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING MOTION TO COMPEL; DECLARATION OF KENNETH G. PARKER

## <u>DECLARATION OF KENNETH G. PARKER</u>

I, Kenneth G. Parker, declare as follows:

1.     I am an attorney admitted to this Court.

2.     Attached hereto as Exhibit A is a true and correct copy of this Court's scheduling order.

3.     Attached hereto as Exhibit B is a true and correct copy of this Court's amendment to its scheduling order.

4.     Attached hereto as Exhibit C is a true and correct copy of the First Amended Complaint on file in this action.

5.     Attached hereto as Exhibit D is a true and correct copy of Plaintiffs' First Request for Production of Documents and Things to Defendants.

6.     Attached hereto as Exhibit E is a true and correct copy of Defendants' Response to First Request for Production of Documents and Things.

7.     Attached hereto as Exhibit F is a true and correct copy of Plaintiffs' Second Request for Production of Documents and Things to Defendants.

8.     Attached hereto as Exhibit G is a true and correct copy of Defendants' Response to Second Request for Production of Documents and Things.

9.     Attached hereto as Exhibit H is a true and correct copy of Defendants Supplemental Response to First and Second Request for Production of Documents and Things.

10.     Attached hereto as Exhibit I is a true and correct copy of Plaintiffs' Second Set of Interrogatories to Defendant Ron Miller.

11.     Attached hereto as Exhibit J is a true and correct copy of Defendnat Ron Miller['s] Response to Second Set of Interrogatories.

12.     Attached hereto as Exhibit K are true and correct copies of certain pages from the transcript of the deposition of David Dimas.

13.     Attached hereto as Exhibit L is a true and correct copy of an e-mail I sent to counsel for defendants on February 1, 2008.

1

1    14. Attached hereto as Exhibit M is a true and correct copy of a letter I sent

2 to counsel for defendants on February 7, 2008.

3    15. Attached hereto as Exhibit N is a true and correct copy of a letter I sent

4 to counsel for defendants on February 12, 2008.

5    16. Attached hereto as Exhibit O is a true and correct copy of a letter I sent

6 to counsel for defendants on February 15, 2008.

7    17. Attached hereto as Exhibit P is a true and correct copy of a letter I sent

8 to counsel for defendants on April 9, 2008.

9    18. Attached hereto as Exhibit Q is a true and correct copy of documents

10 produced by Defendants.

11    19. Attached hereto as Exhibit R are true and correct copies of pages from

12 the deposition transcript of Jim Oates.

13   I declare under the laws of the United States that the foregoing is true and

14 correct this 9th day of ~~April~~ May, 2008.

15           /s/ Kenneth G. Parker

16            Kenneth G. Parker

17

18

19

20

21

22

23

24

25

26

27

28

2

DECL. OF K. PARKER